TOWNSHIP OF SUPERIOR *v.* TOWNSHIP OF YPSILANTI.

1. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—FIND-
INGS OF TRIAL COURT.

The Supreme Court hears and considers chancery cases *de novo*
on record on appeal but gives considerable weight to the find-
ings of the trial judge since he is in a better position to test
the credibility of the witnesses by observing them in court
and hearing them testify than is an appellate court.

2. SAME—CHANCERY CASES—FINDINGS OF TRIAL COURT.

The Supreme Court does not ordinarily disturb the findings
of the trial judge in an equity case unless, after an examina-
tion of the entire record, the Court reaches the conclusion
that had it been in the position of the trial judge it would
have arrived at a different decision.

3. TOWNSHIPS—SCOPE OF CONTRACTS—WATER AND SEWAGE FACILI-
TIES.

Finding of trial court that contracts between plaintiff and de-
fendant townships and between each township and private
defendant relative to water supply and sewage facilities were
not limited to specific area *held*, erroneous, where each of the
contracts specified area covered in general vicinity of land
once occupied by temporary governmental housing units in con-
nection with Federal government's wartime efforts.

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—JURISDICTION.

Claim of defendant developer in suit by plaintiff township against
defendant township that trial court had no jurisdiction to adju-
dicate as to contract rights between defendants and to relieve

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 3 Am Jur, Appeal and Error § 912.
   Advantage which the original trier of facts enjoyed over reviewing
      court from opportunity of seeing and hearing witnesses.   111
      ALR 742.
[3, 5] 12 Am Jur, Contracts § 314.
[4] 14 Am Jur, Courts § 191.

defendant township of obligations to defendant developer *held*, untenable under record presented.

5. WAR—DEMOLITION OF TEMPORARY HOUSING UNITS—TOWNSHIPS.

Decree setting forth rights of plaintiff and defendant townships and of defendant developer of tract located in both townships which defendant township had purchased from Federal government and which established program for orderly demolition of wartime temporary governmental housing units and establishment of replacement housing facilities and for financing of water and sewage facilities is affirmed except for modification limiting area involved.

Appeal from Washtenaw; Robinson (Thomas N.), J., presiding. Submitted January 7, 1960. (Docket No. 27, Calendar No. 48,255.) Decided October 10, 1960.

Bill by Township of Superior against the Township of Ypsilanti, Washtenaw County, Michigan, and Stephen Lanyi, Fred Gattegno, and Ernest Landry, copartners now doing business as Willow Woods Development Company, to resolve disputes arising from contracts, for injunctive relief, and to establish rights in respect to lands, water mains, and sewers in former emergency temporary housing areas developed by Federal government and disposed of for permanent development. Decree for plaintiff. Defendant Willow Woods Development Company appeals. Affirmed as modified.

*William R. Kelley* and *Maurice A. Merritt,* for plaintiff.

*Burke, Burke & Ryan,* for defendant Willow Woods Development Company.

KAVANAGH, J. Plaintiff township of Superior, Washtenaw county, Michigan, filed this action

against defendants township of Ypsilanti and Willow Woods Development Company, a copartnership, seeking to enjoin certain actions by the defendants. Plaintiff also sought to establish the ownership of certain lands and appurtenances and to determine the rights of the parties under several contracts previously entered into by them.

The United States government, in 1942, pursuant. to condemnation proceedings, obtained title to the land in dispute, designated as parcel 1 and parcel 2 in defendant township of Ypsilanti's trial exhibit Y–1.[1] Thereafter, on part of parcel 1, the United States government caused to be erected wartime governmental housing units in connection with its wartime effort. Further, as a part of the development of this project, water and sewer installations were made, and streets and roadways into and out of the project were developed by the Federal government and used by the public but never dedicated. These water and sewer facilities were owned and operated by the governmental agency in charge of the housing units.

On October 29, 1954, the United States government conveyed to Ypsilanti township the parcel referred to as parcel 1, under the authority of the provisions of the so-called "Lanham act," being a Federal statute,[2] and the provisions of CLS 1956, §§ 125.731, 125.732 (Stat Ann 1958 Rev §§ 5.4091, 5.4092). It is to be noted that almost 50% of the area involved in parcel 1 is located in Ypsilanti township and the remainder in Superior township. New housing units have been constructed in both townships. Parcel 1 contains, in addition to the housing units, a

_____

[1] See attached map. Parcel 1 is the white area, parcel 2 is black.
[2] 54 Stat, ch 862, p 1125, as amended. See 42 USC (1958 ed), § 1501 *et seq.*, and particularly, as to disposal of housing, § 1581 *et·seq.*—REPORTER.

sanitary land fill, well and pump house, and water tank sites.

Parcel 2, consisting of 965 acres of vacant land surrounding parcel 1, is likewise located partly in Superior township and partly in Ypsilanti township. The government constructed a sewage disposal plant on parcel 2.

On October 30, 1954, Ypsilanti township passed a resolution expressing its intention to purchase parcel 2 from the United States government. Ypsilanti township obtained an option from the United States government to purchase parcel 2, which option was to expire on or before April 30, 1955.

On March 31, 1955, Ypsilanti township entered into a contract with the Willow Development Company, a copartnership, the predecessor of Willow Woods Development Company, under the terms of which Willow Development Company purchased all of parcels 1 and 2. It is to be noted, however, that Ypsilanti township expressly reserved easements over parcel 2 as follows:

"But reserving to the seller herein easements along the water mains to and from the wells and pump sites as now located, said easements to be retained by the seller until such time as the location of said mains may be changed or the mains may be abandoned."

This contract further provided for a schedule under which the approximately 600 acres known as parcel 1 were to be conveyed. The last 200 acres were to be conveyed on or before July 1, 1958. Ypsilanti township further agreed to exercise its option to purchase parcel 2 forthwith and to convey the same to Willow Development Company immediately upon receipt of the same. The Willow Development Company agreed to construct sufficient houses of the minimum type permitted so as to house those tenants in possession of the temporary housing as of Novem-

ber 1, 1954, who were able, willing, and qualified to purchase. These houses were to be built so that they could be occupied as the tenants vacated the temporary housing in accordance with the demolition schedule. This contract further provided that all construction of water and sewer installations, mains, pumps, and appurtenances would be installed at the cost of purchaser subject to the general supervision and control of Ypsilanti township water and sewer department. The contract also provided for conveyance of all right, title, and interest in and to any portion of the installations lying within public rights-of-way or within easements created for such installations, at such times as the installations were made. Certain other provisions with reference to the contracts will be given later in this opinion.

On April 5, 1955, the defendant Ypsilanti township exercised its option to purchase parcel 2.

Before Ypsilanti township could acquire title to any of the property owned by the United States government, it was necessary that Superior township waive the requirements of the Lanham act, which required demolition of Willow Village on or before January 1, 1955. Superior township protested the action of Ypsilanti township in acquiring that portion of parcel 2 located in Superior township without prior notice to Superior township in accordance with the terms of the waiver of Superior township dated October 8, 1954. On August 5, 1955, as a result of the protest of Superior township, a contract was entered into between the plaintiff Superior township and Ypsilanti township. On the same day a contract was entered into between plaintiff Superior township and Willow Development Company. On September 26, 1955, a contract between the defendant Ypsilanti township and Willow Development Company was executed. This contract recited:

"The instant agreement is an amended contract of sale and replaces an agreement between the parties hereto dated the 31st of March, 1955."

By deed dated the 30th day of June, 1955, the United States government conveyed to Ypsilanti township the land and appurtenances designated as parcel 2.

All of the area in parcel 2 which Ypsilanti township contracted with Willow Development Company to convey has been conveyed. As to parcel 1, most of those portions which had been cleared of the housing by Ypsilanti township have now been conveyed to Willow Woods Development Company.

The demolition dates and times of conveyances have been modified by agreement and have been extended from time to time upon the request of Superior township and with the agreement of both defendants.

The contractual provision for a 40-acre parcel to be used for community housing was not exercised by Ypsilanti township pursuant to its rights thereunder. Plaintiff Superior township made demand on Ypsilanti township for approximately 20 acres to be set aside for community rental housing and specified a particular tract of land for that purpose. Ypsilanti township refused to convey the particular tract demanded, but as a result of negotiations Willow Woods Development Company offered to Superior township a choice of 3 tracts of land for development for low-cost rental housing. From that time on negotiations were carried on directly between Willow Woods Development Company and Superior township. Superior township selected the tract which is shown on the attached map as 21.67 acres* for rental housing. Pursuant to these negotiations Superior township was given an option to purchase

---

\* This tract is indicated by diagonal lines adjacent to and easterly of the white area with a curved boundary in the central portion of the map.—Reporter.

the 21.67 acres. When it attempted to exercise its option, Willow Woods Development Company refused to convey the parcel covered by the option, claiming that the option, and the plaintiff's exercise thereof, was an *ultra vires* act, not having been authorized by the qualified electors of the township. Superior township filed this action to settle its rights and obtain the relief prayed.

On the trial it was agreed that Superior township had notified Ypsilanti township it had taken over the water and sewer facilities in Superior township, and that it had established its own department and passed an ordinance covering the operation of its water and sewer department in Superior township.

It was agreed between the 2 townships that, for the purposes of the lawsuit, the sewage disposal plant involved had an average maximum flow of 1,750,000 gallons per day measured upon an annual basis. It was further agreed between the 2 townships that the estimated average daily flow from the area formerly owned by the government which lies in Superior township, when fully developed as a residential area, would be approximately 1,200,000 gallons per day, measured upon an annual basis. It was further agreed between the 2 townships that the anticipated gallonage from the balance of the area lying within Superior township, bounded on the north by Geddes road and on the west by Prospect road and on the east by the township line, would be an average of 875,000 gallons per day, measured upon an annual basis, when fully developed as a residential area.

The 2 townships agreed that the rate to be charged Superior township by Ypsilanti township for sewage disposal service would be the bulk rate as measured by the total gallonage as shown by individual water meters of Superior township users.

It was also agreed that at the time of trial there was no debt service charge being made to any users in Ypsilanti township and that therefore none was applicable to any sewage service by Ypsilanti township for Superior township.

The questions of law concern primarily the sewer and water facilities in Superior township and the respective rights of the parties thereto arising out of the various contracts among them, such as their present ownership, their present and future operations, rights of access thereto, and future expansion and extension thereof.

The trial court took the position that the contractual relationship of the parties must be interpreted in the light of the purpose that all sought to accomplish from the beginning—the orderly demolition of the government housing and the substitution of new housing for those dispossessed by such demolition. This was the purpose of the Federal government, of the authorities in both townships, and the design pursued among all parties to the respective contracts.

The trial court further took the position that the pleadings, the pretrial statement, and the exhibits, particularly the contracts themselves, disclosed that all parties contracted with reference to the possibility that Superior township would take over the operation of the sewer and water systems located within its boundaries and that their respective contractual rights would be affected accordingly in that contingency. All the parties understood that the various contracts between them contemplated 2 separate and distinct sets of circumstances which the several contracts dealt with accordingly:

(1) Those circumstances occasioned by the continued operation of the facilities in Superior township by the township of Ypsilanti only; and

· (2) Those circumstances occasioned by the·taking over of such operation in Superior township by the township itself.

The trial court found that after a period during which Ypsilanti township operated the facilities, the township of Superior did take over such operation.

The trial court further found the rights of defendants in the sewer and water facilities did not rest on the contract of March 31, 1955, but rather on the contract of August 5, 1955, between Superior township and Willow Development Company, which made specific reference to the rights of the respective parties in relation to the sewer and water lines. Under this contract Willow Development Company, with full knowledge of the agreement of the same date between Superior and Ypsilanti townships, contracted with plaintiff Superior township covering their agreement as to possible future ownership, maintenance and operation of the sewer and water lines as conveyed or to be conveyed to Superior township by Ypsilanti township.

On September 26, 1955, in a contract between defendants which replaced an agreement between them dated March 31, 1955, defendants clearly recognized the future status of the sewer and water mains in the event Superior township took them over. The various contracts indicated that it was not, nor had it ever been, the intention of either of the parties defendant to deal with lands in Superior township in such a way as to interfere with the governmental powers and duties of Superior township. The provisions recognized Superior's constitutional and statutory inherent power to serve its residents from water and sewer mains within its boundaries by acquiring sewage disposal plants and waterworks. The trial court quoted in its opinion the following provisions from the contract of August 5, 1955, between Ypsilanti township and Superior·township:

"Ypsilanti township agrees to supply water and sewer services to Superior township for the area bounded on the north by Geddes road and on the west by Prospect road. Superior township retains the right to decide whether or not it will maintain and operate these services within the Superior township portion of this area. * * * If Superior township does not so elect to operate and maintain the said water and sewer installations, Ypsilanti township will own, operate and maintain the mains and provide services at the same rate applicable in Ypsilanti township. * * * At such time as Superior township assumes maintenance and operation of the mains they will be conveyed to Superior township without cost. Upon request and upon the conclusion of proper financial arrangements therefor, Ypsilanti township agrees to serve lands other than those included within the present government owned area with sewage disposal services and to expand the capacity of its sewage disposal plant not to exceed 50% of its maximum present capacity."

The trial court again made reference to the contract between Superior township and Willow Development Company dated August 5, 1955, and quoted therefrom the following:

"The party of the first part (Willow Woods Development Company) further agrees that in the event the party of the second part (Superior township) owns, maintains, and operates sewer and water lines in that portion of the above referred to area in Superior township, then all tie-ins and connections to said sewer and water mains will be made by separate agreement with Superior township."

The trial court again made reference to the contract between the defendants dated September 26, 1955, and quoted in part as follows:

"If Superior township assumes the operation and maintenance of said mains within Superior township

the purchaser will make the necessary arrangements with Superior township authorities.  *  *  *  All right, title and interest in and to any portion of said installations (water and sewer) lying within public rights-of-way or within easements created for such installations shall, without further compensation, be transferred to the seller, free and clear of any liens or other encumbrances, which transfer shall be accomplished by appropriate bills of sale at such time as the installations are made.  However, if Superior township shall decide to assume the operation and maintenance of the water and sewer mains within Superior township, then title to such mains shall be transferred by the purchaser (Willow Woods Development Company) to Superior township."

The trial court then found as follows:

"In this view of these contracts it follows that the sewer and water facilities in Superior township described in these exhibits became, when Superior township notified the township of Ypsilanti in the spring of 1958, that it had taken them over, the property of Superior township to all intents and purposes.  All lateral lines located in the presently owned village area in Superior township thus become the immediate property of and are subject to be operated and maintained by Superior township, as well also as the well sites and water storage tank located in Superior township, subject only to their proper transfer for the consideration set forth in exhibit A and as therein provided.  Superior township had at that time notified the township of Ypsilanti that it had taken over the sewer and water system and passed an ordinance governing the operations of its own sewer and water department.  The use and maintenance of these facilities under such department and their operation under such ordinance was thereafter subject only to such limitations as were provided in such contracts.

"From this it follows that Ypsilanti township, subject only to such limitations as are provided in said

contracts, is not obligated under its contract with Willow Woods (exhibit C) to furnish sewer and water facilities, or to permit tie-ins to its sewer and water mains in or from any lands in Superior township, such having now become the obligation of Superior township, and as such requiring only the application of such reasonable regulations and restrictions as may be exercised under its lawful police power.

"This finding carries with it a denial of the conclusions presented as issues of fact and law in argument by defendant Willow Woods Development Company. These appear to arise out of a belief that even though it had agreed to be governed by the changed conditions following the exercise by Superior township of its choice to maintain its own sewer and water department that Ypsilanti township was also obligated under its agreements to such defendant relative to such service in the same manner as would have been the case in the event that such choice was not made by Superior township. However, the defendant Willow Woods Development Company had only such rights as were agreed upon between it and Ypsilanti township before Superior township made its election. Willow Woods Development Company now has, following the action by Superior township, only such rights as it now obtains under the lawful regulations of Superior township.

"Under this view it follows that the rights of Superior township cover the water lines as they now exist and are governed by the easements hereinafter mentioned pertaining thereto. Such rights are not confined in their exercise only to such time as Willow Woods Development Company should decide to plat further portions of the former government controlled area, and formally dedicates rights-of-way pursuant to such plats as it may dedicate in the future. Such rights are not confined to and do not exist only for the purpose of repairing, locating, and maintaining said lines only while serving the temporary housing units in existence as of the time

Superior township took over, and until they are demolished. These lines are not, simply because originally designed and planned exclusively for the governmental area, for that reason now to be confined for use only to that area, none of the agreements of the parties justifying such construction, express or implied. Such rights of Superior township are not limited only to the alterations and relocations made by Willow Woods Development Company; they do not entitle Willow Woods Development Company to have its area served without additional cost for expansion, if expansion be required, as provided by contract and hereinafter discussed. Willow Woods Development Company does not have any prior right to services from the presently established plant before these services are permitted to expand beyond the formerly governmentally controlled area.

"The right of Superior township to maintain and operate these facilities carries with it the right of access thereto for such purpose in any part of the township of Superior, within the limitation of its contract with Ypsilanti township, including both that portion not occupied by government housing, as well as that so occupied now and when the operation was maintained by the Federal government.

"No terms can be found in any of the documents presented to this court, whether in the deeds by the Federal government to Ypsilanti township, or in the deeds or land contracts existing between Ypsilanti township as grantor and vendor and Willow Woods Development Company as grantee and vendee relative to the absolute ownership of the sewer lines and mains. All references to said water and sewer lines and mains are to operation, maintenance, tie-in easement and right-of-way. The contract between the Ypsilanti township and Superior township refers to services, extended if so decided by Superior township, beyond the area formerly owned by the government authority and into other areas of Superior township. All the contracts among the parties contemplate the acquisition, ownership, and

operation of the facilities by Superior township, and in no respect limit their use within any particular area limits. Any such limitation is contained only as to the action of Ypsilanti township during such period as Superior township failed to act and only while services were furnished by Ypsilanti township, and then only in respect to such services. If the parties had desired at the time of the making of such contracts, to provide that Superior township would be limited to the extent Ypsilanti township was limited by its agreement, such desire should have been expressed in such contract. Instead, the language used indicated that if Superior township took over, all future rights of the parties would be governed by such circumstance. There would have been no occasion for any contract defining Superior township's rights in such event, if the parties actually contemplated that Superior township was merely taking over a sewage and water system that it could not use, except to carry out commitments of Ypsilanti township, and that was to be of no other use to it whatsoever when and if it acquired the ownership of the system, set up its own department, and passed its own ordinance.

"It is imperative by reason of the situation created by the parties themselves in their respective contracts that performance be such as to carry out the obvious intention of all the parties that Superior township be endowed with the facilities it required, and contracted for, to effect the very purpose sought, *viz:* the furnishing of water and sewer services to Superior township in order that new housing could replace that sought to be demolished, not only in the formerly operated governmental area, now owned by Willow Woods Development Company, but in any portion of Superior township where such replacement was desirable. In order that Superior township may properly use what it has thus received, an access to it must be supplied. In view of the fact that it is a matter of right created by contract, there is no occasion for a resort to condemnation proceed-

ings, as has been suggested. No use need be made of other existing sources of access, if there are such, for the same reason.

"Ypsilanti township shall therefore convey to Superior township easements over and under all and any land in Superior township heretofore or presently owned by Ypsilanti township for the purpose of permitting Superior township to operate, service, maintain and tie into all water supply and water and sewage disposal transmission mains, pumps, and ducts, which easements are determined herein to be as follows: Over the most direct and convenient way from the extremities of the water and sewer mains, lines and facilities through the lands conveyed to Willow Woods Development Company to other lands in Superior township. Should Ypsilanti and Superior townships be unable to agree on the exact location of such easements, they shall be fixed by the court on proper application therefor. Such easements, however, shall be established, in any event, with due regard to the effect such location may have on current plats of the governmental area that may have been filed prior to the date on which Superior township assumed the operation of the lines and while same were operated by Ypsilanti township in that area.

"Defendant Willow Woods contends that the township of Ypsilanti is not obligated under its contract of August 5, 1955, with Superior township (exhibit A) prior to the township of Ypsilanti's conveyance of land to the defendant Willow Woods, and quotes from such contract the following limitation:

" 'This agreement shall only be effective between the parties hereto upon the termination of the legal cause now existing between them in the circuit court for Washtenaw county, and shall only be effective upon conveyance of land to the Willow Development Company in accordance with a contract between Willow Development Company and the township of Ypsilanti.'

"However, the statement of facts prepared at the pretrial statement contains the following language:

" 'By deed dated August 8, 1955, the defendant Ypsilanti township conveyed to the Willow Development Company, the land heretofore referred to and generally known as parcel 2, which deed is recorded in liber 708, page 117 through 130, being defendant's exhibit W-6';

"also:

" 'All of the area in parcel 2, which Ypsilanti township contracted with Willow Development Company to convey, has been conveyed. As to parcel 1, most of those portions which have been cleared by Ypsilanti township of the housing, have now been conveyed to Willow Development Company, but there remains to be conveyed portions of parcel 1 which have not been cleared of the temporary housing as well as some cleared land.'

"These statements show compliance with the condition precedent as to the conveyance of land provided for in exhibit A, and in no way justify any claim that by virtue of other provisions contained in exhibit A, or other contracts, or by reason of any other facts and circumstances disclosed on this record Ypsilanti township is not required to furnish water and sewer services for the area bounded on the north by Geddes road and on the west by Prospect road, even when Superior township has concluded proper financial arrangements for the expansion of the sewage disposal plant up to 50% of its present maximum capacity. No such issue is presented by defendant Ypsilanti township, the actual grantor in the deeds of conveyance covering the land. No language appears anywhere in any of the contracts that by strained or unstrained construction justifies the claim that Superior township would exercise no rights with respect to the water and sewer mains in Superior township, or be entitled to sewer and water services in the area outside of the original governmental area, until all of the temporary housing units erected on parcel 1 were demolished and all of the raw land was

conveyed by Ypsilanti township to Willow Woods. Development Company.

"One of the limitations in the contract between Ypsilanti township and Superior township (exhibit A) pertains to the conclusion of proper financial arrangements to provide for the expansion of the sewage disposal plant located in Ypsilanti township recently serving the entire Willow Village area.

"All parties plaintiff and defendant agree that such proper financial arrangements must be defined and have presented their respective plans for adjudication by the court as to what constitutes 'proper financial arrangements.' Both townships and Willow Woods have submitted proposed plans, all of which contain points of conflict and areas of disagreement, as well as impractical suggestions that appear to be based on conjecture, estimates based on insufficient information or lack of full consideration concerning essential factors. As indicated herein any obligation Ypsilanti township had to Willow Woods Development Company was transferred by contract to Superior township upon its establishment of its own sewer and water system. 'Proper financial arrangement,' therefore, need only be such as concerns Ypsilanti and Superior townships.

"It would appear that the only suitable financial arrangement that can be made under the circumstances is for Superior township to pay the amount needed in cash at the time the present capacity of the sewage disposal facility anticipated for use is reached. For the purposes of this lawsuit, it is agreed that the maximum capacity of the present sewage disposal plant located in the southeast corner of exhibit Y–1 is an average daily maximum flow measured upon an annual basis of 1,750,000 gallons per day; and that the estimated daily flow measured upon an annual basis from the area formerly owned by the government which lies in Superior township when fully developed as a residential area will be approximately 1,200,000 gallons per day; that the anticipated gallonage from the balance of the area.

lying within Superior township bounded on the north by Geddes road and on the west by Prospect and on the east by the township line will be an average of 875,000 gallons per day measured upon an annual basis when fully developed as a residential area. In establishing a plan that covers the phrase, 'suitable financial arrangements' the amount of sewage coming out of Superior township to be treated by Ypsilanti township must be determined on the basis of such figures in terms of specific gallonage. The existing sewage disposal plant, therefore, will not be sufficient to properly treat the entire area required to be serviced to its full capacity without expanding the capacity thereof to provide for sewage in excess of 1,200,000 gallons. The township of Ypsilanti should not be obligated to process any sewage from Superior township in excess of 1,200,000 gallons per day, except as stated upon payment in full by Superior township of the cost of such facility expansion necessary to accommodate such excess.

"Superior township at a time in the future when the daily sewage flow reaches 1,000,000 gallons as determined by meters and by the engineers of either of these parties may then elect to have the capacity of said plant increased to a point not exceeding 875,000 gallons in addition to the 1,200,000 gallons required by the present contract. Superior township shall notify Ypsilanti township of such election and of the extent to which it so desires to expand the capacity of said plant. Thereupon, engineers for each of said townships shall present to both of said townships their estimated cost for whatever expansion is desired. Superior township shall then place the total amount of said estimate in escrow for said planned expansion. As soon as the contract has been let for the expansion, said sum shall be paid to Ypsilanti township. The expanded plant shall belong to Ypsilanti township, except that the expanded capacity requested by it shall be reserved for Superior township. In the event Superior township does not make its election to expand

said sewage plant, it shall be precluded from issuing tap-in permits to the lines running into the Ypsilanti township sewage disposal plant to such extent as to increase the flowage to the plant to more than 1,200,-000 gallons.

"The cost of such expansion shall not be repaid by Ypsilanti township to Superior township, inasmuch as the expansion for the amount allocated to Superior township will be made only for the benefit of Superior township.

"The above and foregoing shall constitute 'suitable financial arrangements.'

"It is noted that such expansion as herein provided may not be necessary if Superior township is obliged to use other expanded sewage disposal facilities than those presently contemplated. The scope of the expansion that may be appropriate at the time it is needed may be greater or less. It might in the future be more economical or otherwise suitable for both parties to build a new facility or facilities, or to make other arrangements than those now contemplated. It is not possible at this time to estimate costs several years hence or at any time in the future, and the decree to be entered herein may provide that the parties may by a supplemental mutual agreement, if such should be required, substitute another or different plan; otherwise, the plan herein set forth shall be conclusive as to their respective rights in such respect.

"The present attitude of the State department of public health is not an issue in this case. No party hereto should be permitted to use it to borrow trouble. Such attitude is not at this time anything definite. Long before this proposed regulation of the State board of health shall have any effect on the planned expansion, such issue may have been determined in such manner as to eliminate the necessity for dealing with it in this controversy. If not resolved, if, as, and when Superior township requires such expansion, it necessarily follows that no financial plan capable of enforcement, including construc-

tion and use of an expanded plant could be presented. It cannot be assumed that the parties contracted for something impossible of performance, contrary to public policy, or in violation of law.

"Until demolition has been completed, the housing now in operation in Superior township is the responsibility of Ypsilanti township under its present contractual obligation. It, therefore, must as it collects rentals for services to such housing, continue such responsibility, there being nothing inherent in the current situation as a practical matter to interfere with such operation. Its obligation, therefore, will be as a customer of Superior township during such operation, and it will be required only to submit to such regulations as are lawfully imposed as a customer of Superior township by virtue of its contractual obligation and obligations imposed by law.

"Counsel for Willow Woods Development Company and the township of Superior are negotiating with reference to settlement of matters pertaining to option in this lawsuit, exhibit W-3 (D), and pertaining to the sale of lands described therein to Superior township and expect to resolve such issue amicably. If unable to agree and the issue must be presented to the court for final determination, proofs are to be submitted in support of the claim of the parties as to the purchase price which the option called for. The issue as to the validity of the option and the purchase price to be paid therefor is, therefore, left for further determination by the court; but if agreement is reached as here indicated, provision therefor may be made in the decree to be entered pursuant to this opinion.

"Ypsilanti township already has under its jurisdiction the maintenance and operation of a water system that supplies only Willow Run Village, supplying the portion located in Ypsilanti township, as well as that located in Superior township. The wells and storage tanks are located in Superior township. The ownership of utility lines lying in Superior township being in Superior township, in accordance

with this finding, as a practical matter the installation of several valves at the township line between Ypsilanti and Superior townships, the court is informed, will permit the complete severance from the present village of that portion lying in Ypsilanti township. The Ypsilanti township portion may be serviced from the water system supplying the rest of Ypsilanti township, and the Superior township portion may be serviced from the existing village water system. This measure will also enable Superior township to have immediately and completely jurisdiction of a water system adequate to care for a large amount of expansion in addition to the village operation. With the transfer to Superior township of the water system, Ypsilanti township no longer has a continuing obligation to supply water to Superior township. In view of Superior township's present ownership and control over all water lines, wells and storage tank facilities in Superior township, since Superior township's establishment of its own sewer and water system, the contracted obligation to supply water to Superior township is fulfilled.

"All sewage from Superior township, as herein specified, including that from the village, shall be taken at the township line and processed by Ypsilanti township with the qualification, however, that Superior township is obliged to continue uninterrupted water and sewage service to the Superior portion of the former government housing in the village in order to permit Ypsilanti township to maintain its obligation of maintaining the village operation until the village has been demolished. The rate to be charged to Superior township by Ypsilanti township for such sewage disposal service shall be the bulk rate as measured by the total gallonage as shown by individual water meters of Superior township users, under the provisions of ordinance No 11 of Ypsilanti township, as amended.

"If extension of time is required for any equitable reason not now indicated to the court for demolition of the housing now in use in Superior township be-

yond the agreed date of March 1, 1958, the court at the time of the entry of decree herein will extend such time to such date as may be reasonable and proper to permit the carrying out of the provisions of the decree."

Following the filing of the opinion of the trial court, objections to the proposed decree were presented by the Willow Woods Development Company. The objections assert that the findings of fact and decree purport to relieve defendant Ypsilanti township from its contractual obligations to defendant Willow Woods Development Company in that the trial court had no jurisdiction to adjudicate on the contractual rights as between Ypsilanti township and Willow Woods Development Company, since defendant Ypsilanti township had not asked relief with respect to its contractual obligation to the other defendant. Willow Woods Development Company further claims no prayer for relief had ever been filed or served on it, and no opportunity had been given either defendant to file written pleadings raising issues of law and fact as between the defendants, or to present proofs on such issues. Further objections were made that the findings and proposed decree were ambiguous in that said findings were made "subject only to such limitations as are provided in said contracts," which qualification fails to clarify or adjudicate the rights of defendant Willow Woods Development Company and the obligations of Ypsilanti township. The objections also stated that if Ypsilanti township's contractual obligation to the defendant Willow Woods Development Company was in any way changed by the assumption by Superior township of sewer and water lines, such obligation should not be thereby terminated but merely transferred to the township of Superior for the bene-

fit of defendant Willow Woods Development Company.

All the objections to the proposed decree were denied and a decree in accordance with the opinion of the trial court was filed. Motion for rehearing and to reconsider and vacate the decree was denied.

Only Willow Woods Development Company appeals, raising the same questions of law and fact as were stated by it in its objections to the decree of the lower court.

We hear and consider chancery cases *de novo* on the record on appeal. *Osten-Sacken* v. *Steiner,* 356 Mich 468; *Futernick* v. *Cutler,* 356 Mich 33; *A & C Engineering Co.* v. *Atherholt,* 355 Mich 677; *Straith* v. *Straith,* 355 Mich 267; *Ball* v. *Sweeney,* 354 Mich 616. This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases. This is primarily because the trial judge is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity. We do not ordinarily disturb the findings of the trial judge in an equity case unless, after an examination of the entire record, we reach the conclusion that had we been in the position of the trial judge we would have arrived at a different decision.

An examination of the record in this case discloses we are in complete accord with the opinion and decree of the trial court with respect to his findings of fact with one exception. This exception is the following finding:

"All the contracts among the parties contemplate the acquisition, ownership and operation of the facilities by Superior township, and in no respect limit their use within any particular area limits."

All the contracts refer to an area bounded on the north by Geddes road, on the west by Prospect road, and on the south and east by the township lines. The position of plaintiff Superior township itself at the pretrial hearing and during the trial indicates that this was its interpretation of the several contracts.

Had the parties desired to permit Superior township to use the sewer and water facilities in the area beyond that covered by the contracts, unquestionably they would have so provided. We feel that the use of those facilities should be limited to the area covered by the contracts themselves. We are not dealing with township rights, but rights under contract.

We have examined the allegations of error and find that appellant Willow Woods Development Company has failed to present any convincing legal argument to support its position.

We feel that the learned trial judge accomplished a remarkable piece of work in examining the large number of contracts and exhibits and in construing them so as to carry out the intention of the parties, which was the orderly demolition of the government housing and the substitution of new housing for those dispossessed by such demolition. It was intended to re-establish in the respective townships as rapidly as possible the operation by both townships of their sewer and water systems and a return to normalcy after the disrupting war years. The rights and duties of all concerned have been adequately and properly protected. It is to be noted that the limitation hereinafter provided for is not to be construed as dealing with the normal statutory rights of townships to own and operate sewer and water facilities but is a limitation growing out of the several contracts.

The decree of the lower court is affirmed except as to paragraph 3 thereof. Paragraph 3 is hereby limited to the area of Superior township covered by the contracts, bounded on the north by Geddes road, on the west by Prospect road, and on the south and east by the township lines. If the financial arrangements provided in the original decree under paragraph 5 thereof would be affected by this limitation, the matter will be referred back to the trial court, upon petition of the interested parties, for an amendment of the decree in accordance with this limitation.

Plaintiff shall have costs.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, and SOURIS, JJ., concurred.

SMITH, J., did not sit.