STACEY *v.* MIKOLOWSKI.

1. CANCELLATION OF INSTRUMENTS—EXISTENCE OF OPTION TO PURCHASE LAND—MEETING OF THE MINDS.

Trial court's finding, in suit for specific performance of option to purchase real estate wherein defendant filed a cross bill to cancel the option and for rescission of note and mortgage, that there had not been a meeting of the minds with respect to the execution of the mortgage and option and vacating the option and rescinding the mortgage and note *held*, supported by testimony adduced showing, among other things, defendant had not understood the transaction.

2. APPEAL AND ERROR—CHANCERY CASES—FINDINGS OF TRIAL JUDGE.

The Supreme Court in hearing a chancery case *de novo* gives great weight to the findings of fact of the trial judge, where he had the opportunity of seeing the witnesses while testifying, and does not reverse under such circumstances unless a different conclusion would have been reached from a reading of the entire record.

Appeal from Macomb; Noe (Alton H.), J. Submitted April 11, 1962. (Docket No. 62, Calendar No. 48,766.) Decided September 10, 1962.

Bill by William J. Stacey and Stella Stacey against Louis Mikolowski for specific performance of contract for sale of real estate upon exercise of option. Cross bill for cancellation of option and rescission and discharge of note and mortgage. Decree for defendant. Plaintiffs appeal. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 49 Am Jur, Specific Performance § 51.
[2] 3 Am Jur, Appeal and Error § 897.

*Manuel Zechman* (*Meyer Weisenfeld,* of counsel), for plaintiffs.

*Guy L. Frost* and *Florence M. Schoenherr,* for defendant.

KAVANAGH, J.   This matter came on to be heard upon the bill of complaint seeking specific performance of an option dated February 13, 1957, granting to plaintiffs the right to purchase a parcel of land owned by defendant, defendant having filed a cross bill of complaint seeking cancellation of the purported option and rescission of the real-estate mortgage and note.

At the conclusion of the proofs the trial court found that defendant did not understand the nature of the transaction and believed he had executed only a mortgage and note, and that the option on its face did not show adequate consideration.   The lower court further found that defendant, because of lack of mental capacity and undue influence, did not understand nor did he voluntarily execute the option, and that the sale price of $12,000 was inadequate and unconscionably inequitable.   The court entered a decree canceling and vacating the option and rescinding the mortgage and note.

From this decree plaintiffs have taken an appeal.

Although 6 stated questions are raised in appellants' brief, there are basically only 2 questions involved in this appeal: (a) Was the option price fair and adequate under the circumstances of this case? (b) Did the optionor understand the terms of the option, or should he have understood its terms under the circumstances of the case?

Plaintiffs filed their bill of complaint in the Macomb county circuit court for specific performance of an option, copy of which was attached to the bill of complaint.   They alleged that on February 13,

1957, defendant executed an option granting plaintiffs the right to purchase certain real property described in the bill of complaint for the sum of $12,000. The bill alleged that simultaneously therewith the defendant executed a note for $4,000 secured by a mortgage on real estate covered by the option. The mortgage was recorded in the office of the register of deeds of Macomb county. The bill alleged that the defendant refused to perform in accordance with the terms of the option. Attached to the bill was a copy of a letter exercising the option on the part of plaintiffs.

Defendant answered the bill admitting the option, mortgage and note were executed, but claiming that the option was induced through the fraud, misrepresentation and coercion of plaintiffs.

Defendant claimed it was represented to him by the plaintiffs at the time of the execution of the documents that the option was conditional and was not to be exercised unless and until there was default in the payment of the mortgage. Defendant alleged there had been no default in payment of the mortgage at the time of the attempt to exercise the option.

Defendant alleged in his cross bill that after the death of his wife on August 2, 1955, he was despondent, and became an habitual alcoholic; that plaintiffs operated a bar where defendant spent a great part of his time drinking intoxicating beverages; that plaintiff William J. Stacey induced defendant to borrow $4,000 from him secured by note and mortgage and to execute the option.

Plaintiffs filed an answer to this cross bill denying they were guilty of any fraud, duress, or coercion and alleging that defendant was at all times the moving party in obtaining the loan; that defendant was sober at the time the agreement was made and the papers were drafted; and denied defendant was entitled to have the option canceled.

A lengthy testimonial record discloses that the defendant was a man upwards of 54 years of age, who only completed the sixth grade in school, who had but very little business experience, and who had never owned any real estate except his home. There was testimony by his 2 sons and another witness to the general effect that he spent most of his time during the several months just preceding the execution of the option and mortgage at the Grand Duchess Bar operated by plaintiffs. While at the bar he drank extensively and appeared to be under the influence of intoxicating liquor on numerous occasions when he returned from the bar. On 1 occasion defendant was arrested for drunk driving.

Defendant himself testified he had only known Mr. Stacey since he started going to the bar, but that he became reasonably well acquainted with him and had been loaned money by Mr. Stacey; that Mr. Stacey had purchased drinks for him both at his bar and at other locations; that they had driven around the city together; that during their travels a discussion was had about Stacey and defendant entering the building business—defendant to put up the land and Stacey, who was doing home development in the area, would have homes constructed on it; but they were unable to agree upon a deal that would work satisfactorily for both.

Defendant testified that Mr. Stacey, on learning defendant was indebted to a brother and in need of some money, suggested he would loan him $4,000 on his property and take a note and mortgage back. They visited 2 real-estate men, who gave estimates on the value of the property—one of them indicating a value of $3,500 per acre and the other a value of $60,000. Upon the expression of opinion by the second real-estate dealer (a Mr. Heath), Mr. Stacey said: "No, let's get out of here. That man doesn't know what he's talking about." Stacey then pro-

posed they go to an attorney to draw the papers for the mortgage. Defendant suggested going to his attorney. Plaintiff refused saying, he would have nothing to do with him, "he's a crook." They went to another attorney's office but he was not available. They then approached an attorney whom the plaintiff knew and plaintiff arranged for the papers to be drawn. They returned on a subsequent date to sign the papers. After the papers were executed, no copy was given to defendant. It was his understanding that he had only signed a mortgage and note.

Testimony by 2 bartenders was to the effect that defendant never drank in plaintiffs' bar other than Coca Cola and an occasional beer. They further testified plaintiff William Stacey was not well acquainted with defendant, never loaned him any money, and never bought him any drinks nor permitted them to buy him drinks.

Plaintiff William Stacey testified the defendant approached the question of borrowing some money from him or selling the property to him. He further testified he wasn't interested in the property at all, but nevertheless, at the request of defendant, he decided to loan him the money and to take the option to purchase.

The mortgage for $4,000 was for a 5-year term. The option to purchase for $12,000 was for a like 5-year term, and provided that if any payments had been made on the mortgage prior to the exercising of the option there would be an adjustment toward the sale price of $12,000.

Mr. Van Howe, a realtor, testified for defendant as to the value of the property. He explained in great detail the facts he took into consideration in arriving at his appraisal figure. These included in part, the zoning of the property, the amount of traffic, the asking price on other property in the

area, the previous asking price on this property under a listing some 3 years earlier, conversations with other realtors as to the value of the property, the fact that Socony Mobil Gas Company took an option to purchase the same property for $29,500 some 2 or 3 years previously. He then testified the value of the property was $37,700.

From a reading of the complete record we cannot say the trial court erred in finding there was not a meeting of the minds of the parties with respect to the execution of the mortgage and option. The record supports the position of the trial court that the defendant did not understand the nature of the transaction he entered into with plaintiffs. It discloses ample testimony to support the position of the trial judge that defendant believed he was executing only a $4,000 note and mortgage. The trial judge properly gave consideration to the fact the option price was fixed at $12,000 and testimony disclosed the property was worth at least $20,000 to $25,000 more than that amount. We think the trial judge correctly concluded that had the defendant understood what he was doing, he would certainly not sign an option to sell the property for $12,000 when he had executed a previous option to sell the property for $29,500.

We do not pass upon the question of whether the trial judge erred in refusing to permit plaintiffs' attorney, who prepared the papers, to testify as to whether or not he properly explained the transaction to defendant. Even if the trial judge did err in this respect, we do not believe he or this Court would reach a different conclusion after a consideration of the whole record. The record amply supports the finding that defendant did not understand the transaction.

In our opinion the record amply sustains the conclusions of the trial court. The trial judge, who

had the opportunity of viewing the witnesses and hearing their testimony, resolved the issues in favor of defendant. While on a chancery appeal we hear the matter *de novo,* we do give great weight to the findings of fact of the trial judge who had the opportunity of seeing the witnesses while testifying. We do not reverse under such circumstances unless we find from a reading of the entire record we would have reached a different conclusion. *Ball* v. *Sweeney,* 354 Mich 616; *Straith* v. *Straith,* 355 Mich 267; *A & C Engineering Co.* v. *Atherholt,* 355 Mich 677; *Futernick* v. *Cutler,* 356 Mich 33; *Osten-Sacken* v. *Steiner,* 356 Mich 468; *Township of Superior* v. *Township of Ypsilanti,* 361 Mich 456; *Resh* v. *Fox,* 365 Mich 288. We have examined the record and see no reason for disturbing the trial judge's findings.

The decree of the lower court is affirmed. Defendant shall have costs.

Carr, C. J., and Dethmers, Kelly, Black, Souris, Otis M. Smith, and Adams, JJ., concurred.