ARMSTRONG v SENIOR CITIZENS HOUSING
OF ANN ARBOR, INC

Docket No. 48206. Submitted June 2, 1981, at Lansing.—Decided
February 2, 1982.

Patrice Hardin, a 76-year-old woman who had lost the use of her
left arm and hand as a result of a stroke and damaged her left
leg in an accident, sought to rent an apartment in an apart-
ment building for senior citizens owned and operated by Senior
Citizens Housing of Ann Arbor, Inc. Members of the admissions
committee for the apartment informed Mrs. Hardin that she
could not obtain a unit because her handicap would not permit
her to live in an independent manner as required by the
standards of admission for all apartment residents. Mrs. Har-
din commenced an action in Washtenaw Circuit Court against
Senior Citizens Housing seeking injunctive relief and damages
under the Handicappers' Civil Rights Act. After hearing con-
flicting evidence as to the nature and extent of Mrs. Hardin's
limitations relative to the various admissions criteria, Edward
D. Deake, J., found that Mrs. Hardin's handicap prevented her
from satisfying a number of the admission criteria, concluded
that she was unable to live in an independent manner and
entered a judgment of no cause of action on Mrs. Hardin's
complaint. Mrs. Hardin appealed. During the pendency of the
appeal Mrs. Hardin died and Robert H. Armstrong, personal
representative of Mrs. Hardin's estate, was substituted as plain-
tiff. *Held:*

1. It is a violation of a handicapped person's civil rights as
guaranteed by statute to refuse to rent property to the handi-
capped person by reason of the handicap unless such person,
using an adaptive device or aid, is unable to rent or maintain
the property.

2. The trial court clearly erred in its findings of fact relative
to the extent of Mrs. Hardin's limitations, particuarly if she

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4, 6, 7] 15 Am Jur 2d, Civil Rights §§ 248.5, 250.
[2, 5] 5 Am Jur 2d, Appeal and Error § 820.
[4] 42 Am Jur 2d, Injunctions § 291.

used adaptive devices or aids, and erred in concluding that Mrs. Hardin's handicaps were related to her ability to maintain an apartment.

3. While the prayer for injunctive relief is rendered moot by Mrs. Hardin's death, the claim seeking damages remains.

Reversed and remanded.

BEASLEY, P.J., concurred in part and dissented in part. He would hold that the trial court's findings of fact concerning plaintiff's inability to satisfy defendant's independent living requirements were not clearly erroneous. However, he would hold that defendant's independent living requirements did violate the Handicappers' Civil Rights Act. He concurs in the reversal and remand for trial on the question of the claim for damages.

### OPINION OF THE COURT

1. CIVIL RIGHTS — HANDICAPPERS — RENTAL PROPERTY.

It is a violation of a handicapped person's civil rights to refuse to rent or lease real estate to such person because of such person's handicap where the handicap is unrelated to the individual's ability to acquire, rent or maintain the property or because of the individual's use of an adaptive device or aid (MCL 37.1502; MSA 3.550[502]).

2. COURTS — FINDINGS OF FACT — COURT RULES.

Findings of fact by a trial court will be overturned on appeal where, on review of the whole record, the reviewing court determines that the findings are clearly erroneous (GCR 1963, 517.1).

3. CIVIL RIGHTS — HANDICAPPERS — HOUSING.

The civil rights of a handicapped person are abridged with respect to the rental or leasing of housing where such person is denied the opportunity to rent housing because of the person's handicaps and the handicaps are not related to the person's ability to maintain the property within the meaning of the Handicappers' Civil Rights Act (MCL 37.1502; MSA 3.550[502]).

4. CIVIL RIGHTS — HANDICAPPERS — INJUNCTIONS.

A prayer for injunctive relief brought under the Handicappers' Civil Rights Act is rendered moot by the death of the handicapped person seeking injunctive relief (MCL 37.1606; MSA 3.550[606]).

Partial Concurrence and Partial Dissent by Beasley, P.J.

5. Courts — Findings of Fact — Court Rules.

> *Findings of fact by a trial court are not clearly erroneous where, although the evidence is conflicting, there is evidence supporting the trial court's findings (GCR 1963, 517.1).*

6. Civil Rights — Handicappers — Housing.

> *The elderly handicapped cannot be prohibited from residing in housing other than housing specifically planned for the elderly handicapped (MCL 37.1102; MSA 3.550[102]).*

7. Civil Rights — Handicappers — Housing.

> *The civil rights of a handicapped person are abridged with respect to the rental or leasing of housing where such person is denied the opportunity to rent housing because of the person's handicaps and the handicaps are not related to the person's ability to maintain the property within the meaning of the Handicappers' Civil Rights Act (MCL 37.1502; MSA 3.550[502]).*

Legal Services of Southeastern Michigan (by *Susan D. Hartman),* for plaintiff.

*Robert B. Creal,* for defendant.

Amici Curiae:

*William Campbell,* for Michigan Protection and Advocacy Service for Developmentally Disabled Citizens.

*Kent Hull* and *Ronald M. Soskin,* for National Center for Law and the Handicapped, Inc.

Before: Beasley, P.J., and M. J. Kelly and N. A. Baguley,* JJ.

N. A. Baguley, J. This appeal involves an interpretation and application of the housing accommodations provisions of the Michigan Handicappers' Civil Rights Act, hereinafter, the Act. MCL 37.1101 *et seq.;* MSA 3.550(101) *et seq.*

Patrice Hardin, now deceased (hereinafter plain-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tiff), filed suit on May 21, 1979, seeking injunctive relief, monetary damages, and her costs and attorney fees for defendant's alleged violations of § 502 of the Act. MCL 37.1502, 37.1606; MSA 3.550(502), 3.550(606). This appeal of right is now brought from the trial court's finding of no cause of action after a bench trial in the Washtenaw County Circuit Court. In 1979, after almost 11 years, plaintiff's name reached the top of the waiting list for a rental unit in Lurie Terrace, an apartment building for senior citizens owned and managed by defendant. Two members of defendant's admissions committee personally interviewed plaintiff and told her that she could not obtain a unit because her particular handicap would prevent her from living in an independent manner as was required of Lurie Terrace residents.

At the time of trial, plaintiff was a 76-year-old woman who had lost the use of her left arm and hand after a stroke in 1968. She had also damaged her left leg in a later accident but was able to walk with the aid of a cane. Plaintiff's witnesses testified that she was able to cook and wash dishes, could walk and climb stairs slowly, dressed herself, and attended a swimming program once a week where she was able to have her hair washed. Plaintiff did need assistance with transportation to do her shopping and banking chores.

Defendant presented evidence that plaintiff could not meet all of Lurie Terrace's standards for admission.[1] The standards are guides to a determi-

---

[1] "STANDARDS FOR ADMISSION TO LURIE TERRACE

"*Definition of Independent Living at Lurie Terrace*

"For reasons of personal safety and harmonious living conditions within the confines of Lurie Terrace the following criteria are used by the Admissions Committee to determine the capability of each entering resident to assume the responsibilities of independent living which are currently being followed by the residents of this facility.

"1. Ability to enter the building, using the existing card system without assistance.

nation of whether the applicant can "live indepen-
dently" and, therefore, be eligible to live at Lurie
Terrace.

The trial court accepted defendant's admission
standards, finding that Lurie Terrace is geared to
the needs of those who can live independently. It
specifically found that plaintiff would be unable to
enter the building without assistance, to exit via
the stairway, and to take care of her personal
needs without help. The court also expressed con-
cern about plaintiff's ability to use the telephone
in case of a fall. It concluded that plaintiff was
unable to live independently within defendant's
definition of independent living. (See fn 1 *supra.)*

Although it is not absolutely clear that the trial
court considered the Act in deciding against plain-
tiff, we assume that it did apply the Act. It found
that defendant did not discriminate on the basis of

"2. Ability to exit from the building by stairway in an emergency
situation (fire).

"3. Ability to open the doors to the exits without assistance.

"4. Ability to dress, bathe, and care for personal needs without help
(to get in and out of tub safely).

"5. Each resident needs good eyesight for the following:

"a. Safe use of stove.

"b. Ability to read exit signs in case of emergency.

"c. Ability to use all doors with card system or key to apartment.

"d. Ability to open mailbox without assistance (requires use of key).

"6. Ability to hear the telephone, fire alarms, and smoke detectors.

"7. Ability to converse with other residents.

"8. Ability to maintain apartment in reasonably clean condition
and the stove in sanitary condition.

"9. Each resident needs to be mentally alert with respect to the
rights for privacy or companionship of the other residents.

"10. Residents should not expect others to help with daily living
responsibilities except in cases of temporary illness or other emer-
gency situations.

"11. Ability to carry tray from end of careteria line to table without
additional assistance.

"12. Residents must be able to supply food and household supplies,
as well as prepare own meals twice a day plus three times on Friday
and Saturday. (Lurie Terrace provides evening meals Mon.-Thurs. and
Sunday noon.)"

physical handicaps but that Lurie Terrace merely was geared to the needs of those who can live independently. The court's opinion did not consider whether defendant's "independent living" qualification violated the Act's proscriptions against discrimination on the basis of a handicap. We will treat the trial court's ultimate finding of no discrimination as an implicit determination that "independent living" is a permissible criterion for a refusal to rent to a handicapped person and does not violate § 502 of the Act.

Section 502 of the Act provides in pertinent part:

"An owner or any other person engaging in a real estate transaction, or a real estate broker or salesman shall not, on the basis of a handicap that is unrelated to the individual's ability to acquire, rent, or maintain property or use by an individual of adaptive devices or aids:

"(a) Refuse to engage in a real estate transaction with a person." MCL 37.1502; MSA 3.550(502).

A "real estate transaction" is defined in § 501(d) as "the sale, exchange, rental, or lease of real property, or an interest therein". MCL 37.1501(d); MSA 3.550(501)(d). The Act's definition of a "person" includes an individual, agent, association or corporation. MCL 37.1103(e); MSA 3.550(103)(e). There is no exception to the Act's application, and we, therefore, rule that defendant is subject to its provisions. We also note that subsection 102(2) did not take effect until 1981 and, therefore, applies in no way to plaintiff's suit filed in 1979.

Plaintiff's claim turns initially on an interpretation of the phrases, "ability to * * * maintain property" and "use by an individual of adaptive devices or aids", contained within § 502. Under the

Act, defendant could lawfully refuse to rent to plaintiff on the basis of her handicap only if that handicap would prevent plaintiff from maintaining the property. (Defendant did not claim that plaintiff was unable to pay the rent. Its only justification for denying plaintiff's application was that plaintiff could not live independently.) The Act also prevents defendant from lawfully refusing to rent to handicapped persons who use "adaptive devices or aids". Together, the two prohibitions must be read to prevent discrimination against an individual who overcomes a handicap by use of an adaptive aid or device. The adaptive aid or device, if used successfully, may prevent a handicap from being related to the ability to maintain property.

In finding that plaintiff could not live independently, the trial court necessarily equated "maintaining the property" with "living independently". Both the trial court and defendant conclude that a prospective lessee who, because of a handicap, requires assistance from other humans to accomplish any act related to renting or maintaining property can be denied housing. This assumes, and defendant argues, that "adaptive devices or aids" cannot be read to include human beings performing certain services.

The only specific findings of the trial court pertinent to the question of whether plaintiff could maintain her apartment are as follows: plaintiff could not open the outside door without assistance, plaintiff could not descend the stairs, and plaintiff could not take care of her personal needs. The court also found that plaintiff could not satisfy standards 1-4, 10 and 11 of defendant's definition of independent living without pinpointing testimony to support these conclusions. (See fn 1 *supra.*)

Before considering the validity of the trial court's findings of fact and conclusions of law, we note that most of the provisions of defendant's standards for admission violate the Act on their face. (See fn 1 *supra.*) Although plaintiff did not allege such a violation, we note that subsection 502(f) prohibits one engaging in a real estate transaction from printing, circulating, posting, mailing or causing to be published a statement or using a form of application "which indicates, directly or indirectly, an intent to make a limitation, specification, or discrimination with respect" to a person's handicap or use of adaptive devices or aids.

Since plaintiff did not generally attack defendant's standards for admission, we must evaluate the trial court's findings of fact. If the findings are not clearly erroneous pursuant to GCR 1963, 517.1, it must be determined whether the findings with respect to plaintiff's handicaps were related to her ability to maintain an apartment within the meaning of subsection 502(a).

The trial court first found that plaintiff was unable to enter the building using the existing key-card system without assistance. This was a violation of defendant's first eligibility requirement. Each resident of Lurie Terrace receives a small card which is inserted into a slot. When inserted, a latch in the door releases electronically. The card must be held in the slot with pressure at the time the handle is turned. The handle is too far from the card slot to work both with one hand, and plaintiff was thus unable to open the door and operate the card with her one good hand. Plaintiff presented expert testimony by a University of Michigan reserach associate in engineering. The witness, Stuart Cohen, testified that a piece of cardboard could be attached to the plastic card

which would provide the constant pressure necessary to activate the electronic release, allowing plaintiff to take her hand off the card and open the door. This testimony was uncontradicted by defendant.

We find that the trial court's conclusion that plaintiff could not use the existing card system was clearly erroneous. The trial court ignored plaintiff's expert testimony that her own personal card could be adapted to enable her to open the door by herself. The Act expressly precludes discrimination against persons who used devices or aids to overcome handicaps.

We also find there was little or no evidence to support the trial court's finding that plaintiff was unable to exit from the building by stairway in a fire emergency and was unable to open the exit doors without assistance. Plaintiff testified that she could walk with a cane, walk short distances without one, and climb stairs with the help of a railing. Defendant's witnesses testified that a stairwell was located at each end of the apartment building and that the stairwells were protected by three-hour fire doors and fire walls. Evacuation from the upper floors would occur only if a fire threatened to break through the fire walls. Under these circumstances, there was no showing that plaintiff would be unable to exit from the building by stairway in case of fire. The trial court made no specific finding that plaintiff's testimony regarding her ability to climb stairs was incredible. It did find that she moved very slowly without assistance. From our reading of the entire record, we reach a totally different conclusion regarding the plaintiff's ability to exit the building in the event of a fire. *Stacey v Mikolowski,* 367 Mich 550, 556; 116 NW2d 757 (1962). Furthermore, plaintiff's abil-

ity to exit via the fire stairways is only marginally related to the ability of plaintiff to maintain an apartment at Lurie Terrace. The trial court's finding that plaintiff was unable to open the exit doors without assistance is clearly wrong.

The trial court also found that the defendant was justified in refusing to rent to plaintiff because of plaintiff's alleged inability to dress, bathe, and care for her personal needs without help. Plaintiff's testimony that she was able to dress herself was uncontradicted. Further, she was bathed weekly at her swimming class. The fact that plaintiff was unable to dress, bathe, and care for her personal needs in line with the standards of other Lurie Terrace residents because of her handicaps did not justify the defendant's refusal to rent to plaintiff under the Act.

We are completely puzzled by provision 10 of defendant's standards for admission to Lurie Terrace. (See fn 1 *supra.*) Although the trial court cited that particular provision as a ground justifying the defendant's refusal to rent to plaintiff, the trial court did not identify those "daily living responsibilities" which it had felt were related to plaintiff's ability to rent or maintain an apartment. It is difficult for this Court to believe that defendant prevents all Lurie Terrace residents from acquiring outside help for daily living responsibilities. This could preclude any resident from having her hair done by a visiting beautician, employing a housekeeper for certain chores, or having a son or daughter visit periodically to help with cooking or maintenance chores. Therefore, we find that provision 10 of defendant's standards for admission is void insofar as defendant purports to use that requirement as a justification for not renting to plaintiff.

The trial court's conclusion that plaintiff could not carry her tray from the end of the cafeteria line to the table without additional assistance and, therefore, violated provision 11 of defendant's standards is a clear violation of § 502(a) of the Act. Plaintiff agreed that she could not carry the cafeteria tray without assistance. However, she suggested that she could carry the tray in a basket or with the use of a pushcart. Both could be considered adaptive devices or aids. More importantly, it is not clear how the inability to carry a tray from the cafeteria line to a table affects plaintiff's ability to maintain an apartment in Lurie Terrace. We also reject this finding as a justification for the discrimination based on plaintiff's handicap.

Finally, the trial court's finding that plaintiff would have difficulty handling any fire emergency or getting to the phone in case of an accidental fall is clearly erroneous on the facts presented at trial and is faulty as a legal conclusion that such facts, if true, justify not renting to plaintiff on the basis of her handicap. Plaintiff testified that she had fallen before and was able to call 911 and receive assistance from a fireman. Such an ordeal could happen to anyone, with or without a handicap. Earlier in this opinion, we rejected the trial court's finding that plaintiff would be unable to gain entrance to the stairwell and descend the staircase in the event of a fire.

In light of our overall assessment of the record, we find that the trial court clearly erred in finding that plaintiff's handicaps were related to her ability to rent or maintain an apartment. Since plaintiff is now deceased, her prayer for injunctive relief is a moot issue. Since the court below found no violation of the statute, there was never a ruling on the plaintiff's claim for damages. There-

fore, we reverse the trial court's finding that defendant did not violate the Michigan Handicappers' Civil Rights Act and remand this case to the trial court to allow the personal representative of plaintiff's estate to present proofs relative to the prayer for damages. See MCL 37.1606; MSA 3.550(606).

Reversed and remanded.

M. J. KELLY, J., concurred.

BEASLEY, P.J. *(concurring in part, dissenting in part).* I respectfully concur in part and dissent in part.

The trial court found as a fact that plaintiff's decedent could not meet the "independent living" requirement for residence in Lurie Terrace, a senior citizen housing project in Ann Arbor. Although the evidence is conflicting, there was evidence to support the trial judge's findings. In addition, the trial judge had opportunity to observe plaintiff's decedent and her condition and to form a judgment regarding this matter, together with credibility of the witnesses. I do not believe that his findings were clearly erroneous under GCR 1963, 517.1. Consequently, I disagree with the majority's conclusion that some of the trial judge's findings of fact were clearly erroneous.

I do not, however, agree with the trial court's reasoning that those who are "elderly handicapped" can be prohibited from residing in housing other than that planned specifically for them. The handicappers statute[1] provides:

"The opportunity to obtain * * * housing * * * without discrimination because of a handicap is guaranteed

---

[1] MCL 37.1101 *et seq.;* MSA 3.550(101) *et seq.*

by this act and is a civil right." MCL 37.1102; MSA 3.550(102).[2]

Another section of the handicappers statute provides:

"An owner * * * shall not, on the basis of a handicap that is unrelated to the individual's ability to acquire, rent, or maintain property or use by an individual of adaptive devices or aids:

"(a) Refuse to engage in a real estate transaction with a person." MCL 37.1502; MSA 3.550(502).

Plaintiff argues that the independent living requirement, as applied in this case, constitutes a discrimination on the basis of a handicap, in violation of the requirements of the handicappers statute. I am inclined to agree and would hold that the interpretation of independent living employed by the trial court is in violation of the handicappers statute. Consequently, while I would be inclined to affirm the trial court's findings with respect to the facts, I would agree with the majority in holding that plaintiff's decedent's handicaps were not related to her ability to rent and maintain an apartment.[3]

In conclusion, I would concur in remanding on the basis indicated herein.

---

[2] Subsequent to the trial in the present case, this section was amended by 1980 PA 478, effective January 20, 1981, which added the following language:

"(2) A person shall accommodate a handicapper for purposes of * * * housing unless the person demonstrates that the accommodation would impose an undue hardship."

[3] I would urge the Legislature to amend the handicappers statute to give special treatment to and, perhaps, allow exceptions for senior citizen housing and nursing homes.